UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHRIS DOE,** | **Civil Action No. 14-5284 (FLW)** |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **NEW JERSEY DEPARTMENT OF CORRECTIONS, et al.,** | |
| **Defendants.** | |

**WOLFSON, United States District Judge:**

I.      **INTRODUCTION**

Plaintiff, Chris Doe,[1] currently confined at New Jersey State Prison ("NJSP") has filed a Complaint alleging violations of 42 U.S.C. § 1983, the New Jersey Civil Rights Act ("NJCRA"), the New Jersey Constitution, and the New Jersey Tort Claims Act ("TCA"), and is seeking damages and various forms of injunctive relief.   Plaintiff alleges that he became the target of a series of violent attacks, harassment, and retaliation by correctional officers and inmates at NJSP and has brought suit against eighteen Defendants, including correctional officers, prison administrators, and the New Jersey Department of Corrections ("NJDOC").   The State has moved to dismiss the Complaint against Defendants NJDOC and NJDOC Commissioner Gary M. Lanigan ("Lanigan").[2]   (ECF Nos. 12; 19.)   For the reasons expressed in this opinion, the State's motion to dismiss is granted in part and denied in part.   The Court notes that the

---

[1] In the caption and his Complaint, Plaintiff is referred to by the fictional name of Chris Doe.

[2] The State has filed two motions to dismiss the Complaint against Defendants NJDOC and Gary M. Lanigan.   The first motion to dismiss was filed on October 2, 2014 (ECF No. 12), and the second motion to dismiss was filed on November 20, 2014. (ECF No. 19.)

constitutional claims against the NJDOC have already been dismissed pursuant to a consent order entered on November 7, 2014 (ECF No. 18), and the Court grants with prejudice the State's motion to dismiss the remaining claims against the NJDOC on the basis of Eleventh Amendment immunity.  Because the State has not met its burden in moving to dismiss the remaining claims against Defendant Lanigan and because Plaintiff adequately states a claim for supervisory liability, the Court denies without prejudice Plaintiff's motion to dismiss Defendant Lanigan at this time.

## II.   **FACTUAL BACKGROUND PROCEDURAL HISTORY**

### a.  **Factual Background**

In his Complaint, Plaintiff alleges that correctional officers and inmates began targeting him for abuse and attacks because he was known to have been a cooperating witness in the successful prosecution of certain gang members, including a high-profile member of the Bloods gang.  (*See* ECF No. 1, Plaintiff's Complaint ("Compl.") at ¶¶ 33-41.) According to Plaintiff's Complaint, correctional officers and inmates at NJSP mistakenly believed that Plaintiff had, in the same timeframe, also cooperated with the State in the prosecution of a former correctional officer at NJSP named Brian Teel.  (*Id.*)  Teel was charged and prosecuted for smuggling a cell phone into NJSP on behalf of a notorious gang member.  (*Id.* at ¶ 36.)

According to Plaintiff, Teel was well-liked by correctional officers at NJSP and was a friend of one of Plaintiff's attackers, Defendant Angelo Avino, also a correctional officer at NJSP.  (*Id.* at ¶¶ 37-40.)  Avino allegedly committed two separate unprovoked attacks on Plaintiff on November 21, 2012 and December 4, 2012.  (*Id.* at ¶¶ 43-54.)  The first attack allegedly resulted in disciplinary action taken against Avino, and a high ranking correctional officer arranged to have Plaintiff transferred from the third floor to protective custody on the

2

second floor. (*Id.* at ¶¶ 43-44).  The transfer was done in order to separate Plaintiff and Defendant Avino, but Avino continued to harass and threaten Plaintiff.  (*Id.* at ¶¶ 45-54.) The second assault by Avino was allegedly caught on video and witnessed by Defendant Valan, and Plaintiff alleges that Defendant Avino was terminated as a result of the attack.  (*Id.*)  Plaintiff further alleges that the correctional officer's union raised funds and held rallies to keep Defendant Valan on the job.  (*Id.*)  The termination of Defendant Avino allegedly precipitated a third assault on Plaintiff, which occurred in late May or early June of 2013 and was committed by Defendant Daniel Ortiz, another correctional officer at NJSP.   (Id. at ¶ 56.) Defendant Ortiz' partner, Defendant Vera was allegedly a friend of Defendant Avino.  (*Id.* at ¶¶ 55-56.)

After these three attacks, "Plaintiff's mother complained to the NJDOC management and other high-ranking State policy makers." (Id. at ¶ 57.)   Plaintiff further alleges that an internal investigation was launched as a result of his mother's complaints.  (*Id.* at ¶ 57.)  Defendant Sergeant Millet, tasked with investigating Plaintiff's allegations, was allegedly persuaded by Defendant Vera not to investigate because Defendant Ortiz made false promises that Defendants would stop targeting Plaintiff.  (*Id.* at ¶¶ 58- 62.)  Shortly thereafter, however, false disciplinary charges were filed against Plaintiff.  (*Id.* at ¶¶ 62-63.)

 On November 21, 2013, another group of correctional officers, Defendants Philips, Roman, and Zemojtel, allowed an inmate to attack Plaintiff while he was showering.  (*Id.* at ¶¶ 64-66).  These Defendants allegedly "jam[med] the shower door lock."  After the shower assault, Defendants blamed Plaintiff for the incident and orchestrated more false disciplinary charges against him.  (*Id.*)

Plaintiff alleges that he "was and still is repeatedly warned and threatened by other inmates, as well as by correctional officers, about impending attacks" due to the perception that

he snitched on Officer Teel and because he complained about the assault by Defendant Avino. (*Id.* at ¶¶ 67-70.)  These threats and warnings allegedly culminated in a violent assault by Defendant McNair on July 24, 2014.  (*Id.* at ¶¶ 71-91.)  Plaintiff contends that in the days leading up to the assault, several correctional officers, including some of the named Defendants, commented sarcastically on Plaintiff's retention of a lawyer and his decision to sue NJSP for mistreatment.  (*Id.* at ¶¶ 72-76.)  Plaintiff alleges that his attacker Defendant McNair repeatedly attempted to provoke him on this basis and told him on one occasion prior to the attack: "You a bitch ass nigger because you think you are going to sue the jail."  (*Id.* at ¶ 76.)  On July 24, 2014, after Plaintiff visited with his mother and his aunts, Defendant McNair violently assaulted Plaintiff in the presence of other correctional officers, causing extensive bleeding to his face, significant injuries to his ribcage, a puncture wound to his right leg, and a closed-head injury. (*Id.* at ¶¶ 80-91.)  Plaintiff alleges that he lost consciousness during the beating.  (*Id.*)  According to Plaintiff, Defendant McNair falsely claimed that Plaintiff attacked him first and that he had only hit Plaintiff three times.  (*Id.* at ¶ 89.)

On July 24, 2015, the day after the attack, Plaintiff's attorney wrote to NJDOC Commissioner Gary M. Lanigan and other State and federal officials requesting an immediate investigation into the alleged violations of Plaintiff's civil rights.  Regarding the repeated assaults, Plaintiff's attorney wrote as follows:

> As you are surely aware, [Chris Doe's] criminal defense attorney, as well as his mother . . . have repeatedly warned NJDOC leadership, and requested intervention and protection about threats made by Correction Officers against [Chris Doe].  There have been incidents of assault by Correction Officers, all apparently in retaliation for the mistaken belief that [Chris Doe] was a cooperating witness for the State against former disgraced SCO Brian Teel.

(ECF No. 1, Ex. C to Ver. Compl.)  The July 25, 2014 letter from Plaintiff's attorney, which is attached as an exhibit to Plaintiff's Complaint, also references and purports to attach correspondence from 2013 and early 2014 that allegedly "document[s] the threats and requests for protection."  (*Id.*)  The letter references a November 22, 2013 letter from Wanda Akin, Esq. to the State Attorney General's office; a December 6, 2013 email from Ms. Akin to the State Attorney General's office; and letters dated January 14, 2014 and March 6, 2014 to the NJDOC and the State Attorney General.[3]  (*Id.*)

For two weeks following the assault, Plaintiff alleges that he was housed in a "suicide room" with no bed or lights and without his personal belongings or cell phone privileges.  (*Id.* at ¶¶ 92-96.)  The room was allegedly unsanitary with an unflushed toilet caked with human feces. Plaintiff was forced to sleep on a mat on the floor next to the unflushed toilet.  (*Id.*)  As a result of these conditions, Plaintiff alleges that he developed a skin condition and fungal infection that still requires medication.  Plaintiff alleges that he was housed in these conditions in retaliation for his assertion of his legal rights.  (*Id.*)

Plaintiff further alleges that prison officials initially ignored his attorney's written requests to (1) obtain Plaintiff's medical records and (2) visit Plaintiff in order to take photographs of his injuries.  (*Id.* at ¶¶ 97-104.)  When the NJDOC defendants responded on July 30, 2014, they indicated that Plaintiff's counsel could visit him but could not take photographs of his injuries without a court order.  (*Id.* at ¶ 102.) The NJDOC defendants subsequently ignored

---

[3] The name of the individual who wrote the letter is redacted, but presumably the letters are those from Plaintiff's mother that are referenced in the Complaint.

Plaintiff's attorney's request for a copy of the policy and procedure concerning the court order. (*Id.* at ¶ 103.) [4]

### b. Procedural History

Plaintiff's filed a verified eight-count Complaint on August 22, 2014.  (ECF No. 1.) Plaintiff sued the NJDOC and Commissioner Gary M. Lanigan in his official and individual capacities.  In addition to Defendant Lanigan, Plaintiff sued Stephen D'llio, Administrator of NJSP, and Antonio Campos, the Associate Administrator at NJSP (referred to collectively as "Supervisory Defendants"), in their individual and official capacities.  Finally, Plaintiff has sued the individual correctional officers (referred to collectively as "Officer Defendants") that allegedly participated in the assaults, harassment, and retaliation against him.

In his Complaint, Plaintiff alleges that Defendant Lanigan is responsible for

> implementation and enforcement of policies and procedures designed to provide inmates with reasonable and necessary medical and psychiatric care, reasonable and necessary accommodations for Plaintiff's disabilities, and to ensure the physical and emotional safety and well-being of an inmate such as the Plaintiff.

---

[4] In Plaintiff's Opposition brief, counsel for Plaintiff makes additional allegations regarding the use of retaliatory disciplinary charges to obstructs Plaintiff's transfer requests:

> In the intervening months, since filing the Verified Complaint, an additional issue has arisen. In an effort to extricate himself from the hostile and dangerous environment, Plaintiff has submitted numerous transfer requests; those requests have been ignored and/or obstructed. Last week, Counsel for the NJDOC and Lanigan made clear that Plaintiffs transfer request will not be considered until the disciplinary charges against him are resolved. These are the same retaliatory disciplinary charges described in Plaintiffs Verified Complaint. Those retaliatory disciplinary charges are being used by the Defendants to (a) prevent a transfer out of the dangerous environment; and (b) to actually unconstitutionally extend Plaintiffs prison sentence.

(ECF No. 24 at 12.)

(Id. at ¶¶ 11.)[5]  In count six, captioned Policymaker and/or Supervisory Liability, Plaintiff

alleges that Defendants created, implemented, and/or maintained deficient policies, including

> [t]he failure to protect, secure, and segregate inmates who have
> cooperated with law enforcement - - especially in a criminal case
> that involves employees of the NJDOC itself and/or involves
> violent inmate gang members. Inmates who have cooperated in
> cases involving NJDOC employees, particularly Correction
> Officers, should be transferred out of State and their safety should
> be ensured[.]

(*Id.* at ¶ 182(b).)  Plaintiff further avers that Defendants failed to train and supervise the

Defendant correctional officers and take action to prevent further abuse of Plaintiff, explaining

that Defendants knew Plaintiff Chris Doe "was the target for severe retaliation by violent gang-

affiliated inmates and by NJDOC Staff, particularly Corrections Officers loyal to SCO Brian

Teel and/or Defendants Avino and Valan, and/or sympathetic to and involved with gang

members." (*Id.* at ¶ 184).  Plaintiff alleges that Supervisory Defendants were aware of a pattern

of misconduct by the Officer Defendants and knew that the failure to investigate, discipline, and

supervise the officer Defendants would result in further injury to Plaintiff, but nevertheless

permitted such incidents to occur unchecked. (*See generally id.* at ¶¶ 183-94.)

On October 12, 2014, the State filed its first motion to dismiss seeking dismissal of

Defendants NJDOC and Lanigan.  Of particular relevance to the instant motion is a Consent

Order entered into by the parties on November 7, 2014 after the first motion to dismiss was filed.

The consent order dismissed Counts two, three, and six (collectively "the constitutional claims")

---

[5] Plaintiff alleges that SJSP administrators Defendants D'Ilio and Campos are "responsible for
the training, supervision, discipline, and conduct of NJDOC Officers, as well as responsible for
ensuring that NJDOC officers obeyed the laws" of the New Jersey and the United States.
Plaintiff further alleges that Defendants D'Ilio and Campos were "directly and personally aware
of numerous and various complaints made by/or on behalf of Plaintiff Chris Doe, with regard to
threats, intimidation and hostility he was experiencing in retaliation for his having cooperated
with State Law Enforcement."  (Id. at ¶¶ 12-13.)

as to the NJDOC and Defendant Lanigan in his official capacity. (ECF No. 18.)  Counts two, three, and six were preserved as to Defendant Lanigan in his individual capacity.  (*Id.*)  Counts one and seven were preserved, and Counts four, five, and eight were dismissed without prejudice and without costs and fees to the parties. (*Id.*)   Of the remaining counts, count one seeks injunctive relief; count two alleges a cause of action for cruel and unusual punishment; count three alleges a cause of action for state created danger; Count six alleges policymaker and/or supervisory liability; and count eight alleges state law causes of action under the TCA.  Counts two, three, and six each allege these violations under "the U.S. and New Jersey Civil Rights Acts & under the U.S. and New Jersey Constitutions."  On November 20, 2014, the State filed its second motion to dismiss, again seeking dismissal of the remaining claims against NJDOC and Defendant Lanigan.  Plaintiff filed its opposition on December 22, 2014.  The State did not file a reply brief.

### III.   ANALYSIS

#### a.  Motion to Dismiss Standard

The State has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the State presents arguments for dismissal under both Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1), the Court addresses both standards.

#### i.  Motion to Dismiss Pursuant to 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted."  Fed. R .Civ. P. 12(b)(6).  On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented."  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *see also DiCarlo v.*

*St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2009) (explaining that under Fed. R. Civ. P. 12(c), moving party bears the burden of showing that there are no material issues of fact, and that he or she is entitled to judgment as a matter of law);  *United Van Lines, LLC v. Lohr Printing, Inc.*, No. CIV. 11–4761, 2012 WL 1072248, at *2 (D.N.J. Mar. 29, 2012).

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first separates the factual and legal elements of the claims, and accepts all of the well-pleaded facts as true.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  All reasonable inferences must be made in the plaintiff's favor.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).  In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create what amounts to a "probability requirement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

The Third Circuit has required a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal*.  First, the court should "outline the elements a plaintiff must plead to a state a claim for relief."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).  Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth.  *Id.*; *see also  Iqbal*, 556 U.S. 678–79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  It is well-established that a proper complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).  Finally, the court should assume the veracity of all well-pled factual allegations, and

then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679).  A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### ii.  Dismissal Pursuant to 12(b)(1)

In its first motion to dismiss, the State raised the defense of Eleventh Amendment immunity.  Federal Rule of Civil Procedure 12(b)(1) mandates the dismissal of a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  This rule permits a party or the court to raise the issue of Eleventh Amendment immunity at the earliest stage of litigation. Fed. R. Civ. P. 12(h)(3).  In *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690 (3d Cir. 1996), the Third Circuit Court of Appeal explained that "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Id.* at 694 n. 2 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)).  The *Blanciak* court added that Rule 12(b)(1) was the proper means of raising the issue of whether the Eleventh Amendment bars federal jurisdiction.  *Id.*

### b.  Plaintiff's Claims Against Gary M. Lanigan and the NJDOC

The Court begins by reminding the State that, as the movant, it bears the burden of demonstrating that Plaintiff fails to state a claim upon which relief can be granted.  Although the State has moved to dismiss only two of the eighteen named Defendants (*see* Nos. 19 at 1; 19-1 at 6), it refers to these two Defendants collectively as "State Defendants" throughout its moving briefs.  With few exceptions, the State does not identify which arguments are applicable to Defendant NJDOC and which are applicable to Defendant Lanigan

and instead leaves the Court to sort out the basis for dismissal.  Furthermore, the State's legal

arguments for dismissing Defendant Lanigan are generic and fail to address any of the specific

facts as pleaded in Plaintiff's Verified Complaint.[6]  Finally, although the State ostensibly seeks

dismissal <u>all claims</u> against Defendant Lanigan, the briefs accompanying the State's first and

second motions to dismiss fails to provide specific arguments or legal support for the majority of

the remaining claims.

### i.  Plaintiff's Claims Against the NJDOC

#### 1.  The Federal And State Constitutional Claims Against the NJDOC were Dismissed Pursuant to the Consent Order

The State contends in its Preliminary Statement that "Plaintiff's claims against State

Defendants must be dismissed because it is well established that State entities and employees are

not 'persons' under 42 U.S.C. § 1983." (ECF No. 19-1 at 7.)  The State further contends that

"Plaintiff's claim pursuant to the NJCRA and the New Jersey Constitution suffer from the same

fatal flaw." (*Id.*)  In his opposition brief, Plaintiff does not directly address the viability of his §

section 1983 and NJCRA claims against the NJDOC but contends that the NJDOC can be held

directly liable for violations of the New Jersey Constitution (Counts II, III, and VI), explaining

that "[u]nlike [a section 1983 claim], a claim under the State Constitution does not have to be

directed at a 'person.'" (ECF No. 24 at 29.)  The State did not file a reply brief or otherwise

address Plaintiff's argument that his claims against the NJDOC arising directly under the New

Jersey Constitution are cognizable.  The Court need not decide this dispute, however, because

---

[6] The Court also notes with some dismay that the only facts mentioned in the State's moving
brief are unrelated to the claims in this case and appear to have been included in error.  For
example, on page 14 of its moving brief, the State asserts that "Plaintiff merely states that State
Defendants failed to properly train in warrant lookups and transportation of prisoners," facts that
are not at issue in this case.  (ECF No. 19-1 at 17.)  The State subsequently refers to the State of
New Jersey and the New Jersey State Police in its brief as though those Defendants were the
subject of the instant motion.  (*Id.*)

the constitutional causes of action under § 1983, NJCRA, and the New Jersey Constitution have already been dismissed against the NJDOC pursuant to the November 7, 2014 consent order.[7]

### 2. The Remaining Claims against the NJDOC Must be Dismissed on the Basis of Eleventh Amendment Immunity.

In the brief accompanying its first motion to dismiss, the State argues that the Complaint must be dismissed against the "State Defendants" on the basis of Eleventh Amendment Immunity, which applies to the State of New Jersey and its agencies.[8] (ECF No. 12-1 at 21.) The Court agrees that the NJDOC is entitled to Eleventh Amendment immunity from suit in federal court even if those claims could be brought in state court. Thus, as explained below, the Court

---

[7] It is axiomatic that the State of New Jersey is not "person" within the meaning of § 1983. The NJDOC, as an arm of the State, is likewise not a "person" amenable to suit under § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64, 70–71 and n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Duran v. Merline*, 923 F.Supp.2d 702, 2013 WL 504582 at *20, n. 4 (D.N.J. 2013) (citing *Grabow v. S. State Corr. Facility*, 726 F.Supp. 537, 539 (D.N.J. 1989) (the New Jersey Department of Corrections is not a person under § 1983)). Here, the NJDOC is a state entity or agency of the State of New Jersey. *See* N.J. Stat. Ann. 30:1B (establishing "in the Executive Branch of the State Government a principal department which shall be known as the Department of Corrections"), and is thus not a person amenable to suit under § 1983. Similarly, only "a person acting under color of law," is a proper defendant under the NJCRA. N.J.S.A. § 10:6–2(c). *See Didiano v. Balicki*, 488 F. App'x 634, 638–39 (3d Cir. 2012) (holding that the NJDOC is not a person under the NJCRA and thus cannot be sued under the NJCRA and affirming grant of summary judgment on Section 1983 and NJCRA claims in favor of NJDOC and NJDOC official sued in official capacity).

[8] The State does not repeat this argument in its second motion to dismiss or incorporate it by reference, and Plaintiff does not address the State's Eleventh Amendment immunity arguments in its opposition. Silence, on the part of the State, however, does not imply waiver in the context of Eleventh Amendment immunity. *See Alessi by Alessi v. Com. of Pa., Dep't of Pub. Welfare*, 893 F.2d 1444, 1454 (3d Cir. 1990) (finding no waiver of Eleventh Amendment defense simply by failing to include discussion of Eleventh Amendment immunity in its brief) (citing *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 239-40, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985) (citations omitted)).

finds that the remaining Counts of the Complaint must be dismissed with respect to the NJDOC based on Eleventh Amendment immunity.

In general, a suit in federal court against a state or one of its agencies is barred by the Eleventh Amendment unless the state waives its immunity.[9] *Ellington v. Cortes*, 532 F. App'x. 53, 56 (3d Cir. 2013) (citing *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 389, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998)).  As the Supreme Court recognized in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the Eleventh Amendment doctrine of sovereign immunity also covers a state's agencies and instrumentalities.  *See C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198 (3d Cir. 2000).  "There are three primary exceptions to Eleventh Amendment immunity: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Garden State Elec. Inspection Servs. Inc. v. Levin*, 144 F. App'x 247, 252 (3d Cir. 2005) (citation omitted).  A state's waiver must be "unequivocally expressed," *Pennhurst*, 465 U.S. at 99, and a state's waiver in its own courts does not constitute a waiver in the federal courts.  *Petty v. Tennessee–Missouri Bridge Comm'n*, 359 U.S. 275, 276, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959).

It is well-established that Section 1983 does not override a state's Eleventh Amendment immunity.  *Quern v. Jordan*, 440 U.S. 332, 340-41 (1979); *Ellington v. Cortes*, 532 F. App'x. 53, 56 (3d Cir. 2013). *See also Alessi v. Commonwealth of Pa. Dep't of Pub. Welfare*, 893 F.2d 1444, 1455 n. 5 (3d Cir. 1990) (Becker, J., concurring and dissenting).  Courts in this District

---

[9] The Eleventh Amendment to the United States Constitution provides as follows: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

have uniformly held that Eleventh Amendment immunity is immunity from suit in federal court and thus "prevents Plaintiff from bring a claim against [the State] in this Court under either § 1983 or the NJCRA." *Wimburg v. Jenkins*, No. 13-4654, 2014 WL 1607354, at *4 (D.N.J. Apr. 22, 2014); *see also Slinger v. New Jersey*, No. 07-CV-5561, 2008 WL 4126181, at *5 (D.N.J. Sept. 4, 2008), *rev'd in part* by 366 F. App'x. 357 (3d Cir. 2010). Thus, even if the parties had not dismissed the constitutional claims against the NJDOC by consent, those claims would have been subject to Eleventh Amendment immunity.

Eleventh Amendment immunity applies to Plaintiff's remaining claims against the NJDOC. With respect to Plaintiff's claim for injunctive relief in Count one, the Eleventh Amendment also prevents this Court from granting prospective injunctive relief against the NJDOC because the third exception to Eleventh Amendment immunity is inapplicable to state agencies.[10] *See Walker v. Beard*, 244 F. App'x 439, 440 (3d Cir. 2007) (citing *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (noting inapplicability of *Ex Parte Young* exception to state agencies)). Finally, the NJDOC is entitled to Eleventh Amendment immunity with respect to Count eight, which alleges state-law tort claims under the New Jersey's Tort Claims Act, N.J.S.A. 59:1–1 et seq. "New Jersey's enactment of the Tort Claims Act, N.J.S.A. 59:1–1 et seq., is a limited waiver of sovereign immunity that does not waive the state's Eleventh Amendment immunity." *Heine v. Commissioner of Dept. of Community Affairs of New Jersey*, No. 2:11–5347, 2014 WL 4199203 at *4 (Aug. 22, 2014) (citing *Matter of Kahr Bros., Inc.*, 5 B.R. 765, 770, n. 9 (Bankr. D.N.J. 1980) and *Ritchie v. Cahall*, 386 F.Supp. 1207, 1209–10 (D.N.J.1974)). Even when a

---

[10] That exception applies to suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law. *See Garden State Elec. Inspection Servs.,* 144 F. App'x at 252.

state consents to a suit in its own courts, it does not follow that a similar suit may be maintained against the state in federal courts. *See Ritchie v. Cahall*, 386 F.Supp. 1207, 1209–10 (D.N.J.1974) (dismissing suit against State as a third party defendant on the basis of Eleventh Amendment immunity and rejecting argument that claims against the State under the TCA could be brought in federal court); *see also Brown v. Ancora Psychiatric Hosp.*, 2012 WL 4857570, *2, 2012 U.S. Dist. LEXIS 146251, *8–9 (D.N.J. Oct. 11, 2012); *NJSR Surgical Center, L.L.C. v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, 979 F.Supp.2d 513, 519-21 (D.N.J. 2013). In several non-precedential decisions, the Third Circuit has relied on *Ritchie v. Cahall*, 386 F.Supp. 1207, 1209–10 (D.N.J.1974), and upheld dismissals of tort claims against the State brought in federal court because the TCA did not waive sovereign immunity as to federal court proceedings. *See Hyatt v. County of Passaic*, 340 F. App'x. 833, 837 (3d Cir. 2009) ("The TCA, which allows suits against public entities and their employees in state courts, does not expressly consent to suit in federal courts and thus is not an Eleventh Amendment waiver."); *Mierzwa v. United States*, 282 F. App'x. 973, 976 (3d Cir. 2008) ("[t]he State of New Jersey did not, in enacting the TCA, waive its sovereign immunity as to § 1983 claims in federal court.").[11]

Because the NJDOC is an agency of the State entitled to Eleventh Amendment immunity and none of the exceptions to Eleventh Amendment immunity apply, the Court grants with prejudice the State's motion to dismiss the remaining claims against the NJDOC on the basis of Eleventh Amendment immunity.

---

[11] Because the Court dismisses Count eight against the NJDOC on the basis of Eleventh Amendment Immunity, the Court need not consider the State's arguments in its first moving brief that Plaintiff fails to state a claim against the NJDOC due to the immunities set out in the TCA. (No 12-1 at 20-23.)

### ii. Individual Capacity Claims of Supervisory Liability Against Gary M. Lanigan

Although the State purportedly moves to dismiss all remaining claims against Defendant Lanigan, the State offers no factual analysis of Plaintiff's Complaint in its moving briefs and confines its legal arguments to disputing whether Plaintiff has sufficiently alleged (1) that Defendant Lanigan has the requisite personal involvement in any of the alleged constitutional violations and (2) that Defendant Lanigan promulgated deficient policies and/or failed to supervise/train his subordinates constitutional violations.  On such a thinly prepared motion, the Court declines to do the State's work for it in analyzing the sufficiency of all possible claims against Defendant Lanigan.  Instead, guided by the Third Circuit recent decision in *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316-19 (2014), the Court limits its analysis to whether Plaintiff states any viable claims for supervisory liability against Defendant Lanigan in his individual capacity.[12]  Although Plaintiff has chosen a difficult path in seeking to hold Commissioner Lanigan liable as a supervisor, the Court finds, at this early stage of the proceedings, that Plaintiff has sufficiently stated at least one claim for supervisory liability against Defendant Lanigan and thus denies without prejudice the State's motion to dismiss.

### 1. Supervisory Liability Under Section 1983

In its moving briefs, the State recites the basic tenets of supervisory liability under § 1983 which requires personal involvement in the alleged constitutional violations and forbids liability on the basis of *respondeat superior*.  The State further contends that Plaintiff's Complaint is devoid of factual allegations regarding Lanigan's "actual knowledge of the alleged incidents,"

---

[12] The official capacity constitutional claims against Defendant Lanigan were dismissed pursuant to the November 7, 2014 Consent Order.  (*See* ECF No. 18.)

16

and includes only conclusory allegations that Lanigan instituted deficient policies and/or failed to train his subordinates, thus failing to meet the pleading requirements announced in *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). (ECF No. 19-1 at 12-13.) Plaintiff counters by laying out facts from his Complaint that he believes are sufficient to meet the pleading standard for supervisory liability under *Iqbal*.

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, a section 1983 plaintiff must allege that each defendant was personally involved in the events constituting the plaintiff's claim. *See Innis v. Wilson*, 334 F. App'x 454, 457 (3d Cir. 2009) (indicating that section 1983 plaintiff could not maintain claim against individual defendant unless said defendant was personally involved in actions causing the claim); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1998) (stating that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*").

Recently, the Third Circuit in *Barkes* ruled that supervisory liability under § 1983 in the Eighth Amendment context survived the Supreme Court's ruling in *Iqbal*.[13]  *See* 766 F.3d at 319–20.  The Court in *Barkes* identified "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates[:]" (1) liability based on an establishment of policies, practices or customs that directly caused the constitutional violation and (2) personal liability based on the supervisor participating in the violation of Plaintiff's

_____

[13] In analyzing supervisory liability, neither the State nor Plaintiff cites to *Barkes*, which was decided on September 5, 2014, prior to the briefing in this case.

rights, directing others to violate Plaintiff's rights, or having knowledge of and acquiescing to a subordinate's conduct. *Id.* at 316 (noting that failures to train and/or supervise are subsets of the first category of liability).  The violation alleged in *Barkes* fell into the first category, as it was based on a supervisory officer's failure to supervise with respect to a deficient prison mental health screening policy.  (*Id.*)

As in *Barkes*, the alleged bases for Defendant Lanigan's liability falls seems to implicate the first category of supervisory liability, and the gravamen of Plaintiff's claims appears to be grounded in violations of the Eighth Amendment, *see Farmer*, 511 U.S. at 828 (To prove an Eighth Amendment violation based on a failure to ensure his reasonable safety, [Plaintiff] must show that the Defendants were "deliberately indifferen[t] to a substantial risk of serious harm.").[14]  The State argues, albeit without analyzing any of the factual allegations in Plaintiff's Complaint, that Plaintiff has not sufficiently pleaded Defendant's Lanigan's personal involvement or his liability based on deficient policies and/or failure to train.[15]  As such, the Court considers whether Plaintiff has sufficiently stated a claim for supervisory liability based on deficient policies and/or a failure to train or supervise.

---

[14] Plaintiff also alleged liability under a state-created danger theory, but the Court does not address this claim generally or with respect to Defendant Lanigan because Defendants have not provided any arguments as to its sufficiency.

[15] The Court also explained that "under *Iqbal*, the level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged." *Id.* at 319. In *Barkes*, the Third Circuit reasoned that since the underlying tort was the denial of adequate medical care in violation of the Eighth Amendment, which has an accompanying mental state of subjective deliberate indifference, in order to hold a supervisor liable for failure to supervise in the context of a deficient mental health screening policy, there must also be deliberate indifference on the part of the supervisor, as assessed under the four part test announced in *Sample v. Diecks*, 885 F.2d 1099 (3d Cir.1989).  *See  Barkes*, 766 F.3d at 320.

The Court in *Barkes* reaffirmed its four-part standard, established in *Sample v. Diecks*, for determining whether an official may be held liable on a § 1983 Eighth Amendment claim for failure to supervise and/or implementing deficient policies.  *See id.* (citing *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989)).  Under *Sample*,

> [t]o hold a supervisor liable for such an Eighth Amendment violation, the plaintiff must identify a supervisory policy or procedure that the supervisor defendant failed to implement, and prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory procedure.

766 F.3d at 330; *id.* at 317.  As explained by the Court in *Barkes*, "[t]he essence of the type of clam we approved in *Sample* is that a state official, by virtue of his or her own deliberate indifference to known deficiencies in a government policy or procedure, has allowed to develop an environment where there is an unreasonable risk that a constitutional injury will occur, and that such an injury does occur."  766 F.3d at 319-20.  Thus, deliberate indifference in the supervisory context may be demonstrated by "(i) showing that a supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiff ['s] or (ii) by showing that the risk of constitutionally cognizable harm was 'so great and so obvious that the risk and the failure of supervisory officials to respond will alone' support the finding that the two-part test is met." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 136-37 (3d Cir. 2001) (citing *Sample*, 885 F.2d at 1099).  Failure to train cases also typically require a pattern of violations.  *See, e.g., Kline ex rel.*

*Arndt v. Mansfield*, 255 F. App'x 624, 629 (3d Cir. 2007) (discussing municipal liability) (citing *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).[16]

Pursuant to *Barkes*, the Court analyzes whether Plaintiff has alleged sufficient facts to show that (1) a policy or procedure in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) that Defendant Lanigan was aware that the policy or procedure created an unreasonable risk; (3) that Defendant Lanigan was indifferent to that risk; and (4) that the constitutional injury was caused by the failure to implement the supervisory procedure.

Plaintiff's Complaint identifies Defendant Lanigan as a policymaker who is responsible for "the implementation and enforcement of policies and procedures . . . to ensure the physical and emotional safety and well-being of an inmate such as the Plaintiff." (ECF No. 1, Ver. Compl. at ¶ 11.) Plaintiff's Complaint details a pattern of violent assaults against him by correctional officers and inmates, which were purportedly precipitated by his status as a cooperating witness in the prosecutions of high profile gang members and the mistaken belief among correctional officers that he had also cooperated in the prosecution of a former NJSP correctional officer. In count six, captioned "Policymaker and/or Supervisory Liability," Plaintiff alleges, among other allegedly deficient policies, that the NJSP policies regarding protection of cooperating witness were deficient because those policies failed to "protect, secure, and segregate inmates who have cooperated with law enforcement -- especially in a criminal case that involves employees of the NJDOC itself and/or involves violent inmate gang members." (*Id.* at ¶ 182(b).) Plaintiff further contends that "[i]nmates who have cooperated in cases

---

[16] There are exceptions though where the failure to train gives rise to obvious and predictable constitutional violations, such as arming police officers without training them in the constitutional limits of using the arms. *See id.* at 629 n.7.

involving NJDOC employees, particularly Correction Officers, should be transferred out of State and their safety should be ensured[.]"  (*Id.*)

The Court also finds that Plaintiff has adequately pleaded the knowledge requirement with respect to Defendant Lanigan.  Notably, after the first three assaults by correctional officers, but months before the assault by Defendant McNair on July 24, 2014, Plaintiff's mother allegedly sent letters to upper management and policy makers in the NJDOC in an effort to notify high ranking prison officials about her son's plight.  The July 25, 2014 letter from Plaintiff's attorney to Defendant Lanigan, attached as an exhibit to the Complaint and sent after the last violent attack, also references correspondence sent to the Office of the Attorney General during 2013-2014, allegedly to notify state officials about the assaults on and threats against Plaintiff.  Plaintiff alleges that the earlier attacks by Defendants Avino and Ortiz resulted in the termination of Defendant Avino and prompted an internal investigation within NJSP.  Assuming the truth of these allegations for purposes of the motion to dismiss and giving all favorable inferences to Plaintiff, it is hardly implausible to draw the inference that Defendant Lanigan was aware of Plaintiff's particular plight prior to the attack on July 24, 2014.  As explained in *Barkes*, to meet the knowledge requirement for supervisory liability, a supervisor need not have specific or knowledge of a particular inmate's situation in order to hold the supervisor liable for deliberate indifference.  766 F.3d at 323-24 (explaining that high-ranking prison official can expose an inmate to danger by failing to correct serious known deficiencies in the provision of medical case even where the supervisor does not know that the particular inmate would be at risk).  Here, however, it is plausible under the facts pleaded in Plaintiff's Complaint that Defendant Lanigan was aware that Plaintiff was a repeated target of assault by correctional officers prior to the July 24, 2014 attack but did not institute any corrective policies, measures,

21

training, or supervision to prevent further injury to Plaintiff.   As such, because Plaintiff

adequately states a claim for relief against Defendant Lanigan in his supervisory capacity and the

State fails to offer additional arguments for dismissal, the State's motion to dismiss the

Complaint as to Defendant Lanigan is denied without prejudice.

## IV.   CONCLUSION

For the reasons expressed in this Opinion, the State's motion to dismiss is granted in part

and denied in in part.  The Court grants with prejudice the State's motion to dismiss the

remaining claims against the NJDOC on the basis of Eleventh Amendment immunity and denies

without prejudice the State's motion to dismiss with respect to Defendant Lanigan.  An

appropriate Order follows.


  _/s/      Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.


Date: May 29, 2015